## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LOMURRO MUNSON, LLC
Matthew A. Schiappa
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, New Jersey 07728
Tel: (732) 414-0300
Fax: (732) 431-4043
Email: mschiappa@lomurrolaw.com

Michael Ovca*
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Counsel for Plaintiff and the Putative Class

| | |
|---|---|
| MARIA OLIVEIRA DA SILVA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>QUEST CONSUMER, Inc., a Delaware corporation,<br><br>*Defendant*. | Case No.:  24-cv-10791<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) Violation of 18 U.S.C. § 2510, *et seq.*; and**<br><br>**(2) New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1, *et seq.***<br><br>**AND DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Maria Oliveira da Silva ("Plaintiff" or "Oliveira da Silva") brings this

Class Action Complaint and Demand for Jury Trial on behalf of herself and all others

similarly situated against Quest Consumer, Inc. d/b/a Quest ("Quest" or "Defendant")

for surreptitiously implementing technology on its website QuestHealth.com that causes its customers' sensitive and private health information to be rerouted to a third-party company called Tealium. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1.      Taking an HIV, STD, or pregnancy test is one of the most deeply private and personal experiences a person can have. Without their knowledge or consent, Quest caused and directed these and other sensitive details about its customers to be intercepted by a third-party for its own financial gain.

2.      Quest is a brand name used by Quest Diagnostics Inc. ("Quest Diagnostics"), one of the world's largest clinical diagnostics companies providing lab testing for a significant portion of the U.S. population. As a well-known lab test provider, consumers trust Quest to keep their personal health information confidential. Unfortunately, as described herein, Quest violated that trust.

3.      Through its website, QuestHealth.com, Quest offers consumers at-home lab tests that do not require a doctor's referral. These tests include those for STDs—such as herpes, chlamydia, and gonorrhea—and for HIV, pregnancy, and ovarian reserve (i.e., a woman's total egg quantity).

4.      Given the sensitive nature of services on QuestHealth.com and its

reputation as a lab testing company, customers reasonably expect that their communications with the website are only received by Quest. However, Quest uses software that deliberately reroutes website visitors' and customers' first-party data (the records that they view and the personal health details they submit) to a third-party company, Tealium.

5.    Tealium leverages this information to identify Quest customers on platforms like Google and Facebook for the delivery of personalized advertisements. Additionally, it uses machine learning to analyze the data and predict Quest customers' future purchasing habits.

6.    The Plaintiff and members of the putative class are Quest customers whose personal health details were intercepted as described herein. They were neither informed of nor consented to having highly sensitive personal and private information rerouted to a third-party in the manner set forth herein.

## **PARTIES**

7.    Plaintiff Maria Oliveira da Silva is a natural person and citizen of the State of California.

8.    Defendant Quest Consumer, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located at 500 Plaza Drive, Secaucus, New Jersey 07094.

<u>**JURISDICTION AND VENUE**</u>

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) there are more than 100 members of the Class, (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iv) none of the exceptions under that subsection apply to this action.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

*A Brief Overview of Quest and Tealium*

12.     Quest is a brand name used by the consumer division of Quest Diagnostics, a publicly traded clinical laboratory corporation with a market capitalization exceeding $16 billion. The company provides diagnostic testing, information, and services.

13.     A 2021 Quest Diagnostics investor conference presentation indicates that expanding Quest's direct-to-consumer business is a key initiative for the

company.[1] Materials from the conference highlight that Quest has the highest consumer brand awareness among lab test providers, and plans to use "micro-targeted" marketing to accelerate growth in its consumer business.

14.    In 2022, Quest Diagnostics, Inc. incorporated a new entity, Quest Consumer, Inc.[2]

15.    On information and belief, despite being set up as a separate company from Quest Diagnostics, Inc., Quest Consumer, Inc. has no separate employees from Quest Diagnostics, Inc. Quest Consumer is generally run as a division of Quest Diagnostics and is an alter ego of Quest Diagnostics.

16.    Through its website, QuestHealth.com, Quest Consumer, Inc. offers direct-to-consumer lab tests, known as "consumer-initiated" tests under the brand name "Quest." Some of these tests can be mailed to customers for at-home use, while others require an in-person visit to a Quest Diagnostics facility after being purchased online.

17.    QuestHealth.com offers over 100 lab tests organized into five categories: (1) General Health, (2) Women's Health, (3) Men's Health, (4) Sexual Health, and

---

[1] https://s2.q4cdn.com/390454341/files/doc_presentations/2021/investorday/Quest2021_InvestorDay_CathyDoherty_FINAL.pdf (last viewed October 21, 2024).
[2] Delaware Department of State: Division of Corporations

(5) Allergy. According to the website, "Best Sellers" include tests for pregnancy, chlamydia and gonorrhea, herpes, and bacterial vaginosis, among others.

18.     Tealium is a company that offers a Customer Data Platform, which is software designed for marketing purposes. It enables companies to enrich first-party data—that is, information submitted directly by customers or collected about their behavior—by combining it with data from additional sources to build a profile of a customer. For instance, a customer profile may include demographic information (like age and location), behavioral data (such as browsing patterns and purchase history), and enriched external data (such as social media activity and market research insights).

19.     Tealium offers companies the ability to create targeted and personalized marketing campaigns based on customer profiles and audience segments.

20.     One of Tealium's popular products is a tag management system called Tealium iQ. A tag management system is software that enables companies to capture the precise behavior and interactions of website visitors.[3] According to Tealium, this first-party data can then be used to create unified customer profiles.[4]

---

[3] https://tealium.com/products/tealium-iq-tag-management-system/ (last viewed October 21, 2024).
[4] https://tealium.com/resource/fundamentals/what-is-tag-management/ (last viewed October 21, 2024).

21.     Companies using Tealium iQ must follow several steps to implement the Tealium "tag" on their websites. One crucial step involves configuring the tag to collect specific types of data about website visitors, such as user-submitted data or behavioral information. Unless the website operator does so, Tealium iQ won't monitor and tag such data.

22.     After configuration, the company (Quest in this case) adds a reference to a piece of code called 'utag.js' on its website. This code, hosted by Tealium, instructs the visitor's web browser to transmit the specified data to a Tealium server using a "tracking pixel."

23.     Data from the website is sent to Tealium through a series of POST requests—a computing method for transmitting data to web servers. These POST requests are directed to a Tealium server using a GIF file (the tracking pixel) as the endpoint to facilitate data collection.

24.     If data traffic logs were examined between a visitor's web browser and QuestHealth.com, it would appear as if an image were being requested from a Tealium server for display on the website. This masks what is actually happening: this process is transferring a website visitor's or customer's first-party data (e.g., user-submitted information and content viewed on the website) to Tealium, a third-party.

25.     No actual image is displayed to the visitor as a result of this process.

Additionally, this functionality is not necessary at all for the website's proper

operation. The sole purpose of the Tealium tracking pixel is to collect behavioral data

about the website visitor.

***The Technical Methods of Interception on QuestHealth.com***

26.     To purchase a lab test on QuestHealth.com, visitors must first create an

account. During registration, visitors are required to enter their first name, last name,

gender, date of birth, physical address, phone number, and email address into an

online form.

27.     Quest configured the Tealium iQ tag on QuestHealth.com to capture the

following information:

| | |
|---|---|
| Quest customer ID | City |
| Quest test specimen ID | State |
| Quest test name | Zip code |
| Quest test order number | Approximate geographical coordinates |
| Email | Gender |
| Order total | Birth year |
| In person test | Credit card provider |
| URLs visited on QuestHealth.com | |

Table 1

28.     As shown in Table 1 above, Quest deliberately configured the Tealium

tag to cause the web browsers of customers and visitors to QuestHealth.com to

reroute their submitted information—including email address, phone number, birth

year, gender, and exact test names ordered—to Tealium's servers.

29.     Additionally, Quest configured the Tealium tag to capture the specific URLs of pages visited by customers on QuestHealth.com. These URLs contain the names of the lab tests themselves, for example the URL for a Hepatitis C lab test is: questhealth.com/product/hepatitis-c-test-with-confirmation-8472M.html. As a result, even before a potential customer makes a purchase, the names of the specific lab tests they have viewed are transmitted to Tealium.

30.     The Tealium tag runs on nearly every page of QuestHealth.com, directing the customer's web browser to transmit sensitive first-party information to Tealium's servers within milliseconds after loading. Each POST request to Tealium's server is paired with a seemingly innocuous request to display a GIF file hosted by Tealium.[5]

31.     These POST requests and the Tealium tag serve no practical purpose other than rerouting the visitor's first-party communications intended for Quest to Tealium. No image is actually displayed to the website visitor on QuestHealth.com. Instead, an invisible 1x1 pixel is returned (hence the name, "tracking pixel"). Consumers never see the pixel, and even a savvy website visitor reviewing website traffic logs would not see their information being surreptitiously shared—they'd merely see the request for a Tealium GIF file.

---

[5] Tracking pixel URL: pc-quest-collect.tealiumiq.com/questdiagnostics/questhealth/2/i.gif.

32.    The data Telium receives exposes a wealth of sensitive information about Quest customers, such as potential medical conditions, sexual history, and reproductive health. This enables Tealium to build a comprehensive profile on the customer, their body, and their choices.

***The Intercepted Data is Further Improperly Used and Exploited***

33.    Tealium provides a "Connector Marketplace" that enables companies like Quest to integrate customer data with various marketing platforms, including Facebook, Google, TikTok, and LinkedIn. This integration allows customer profiles to be matched with user data from these platforms, facilitating more targeted advertising and personalized marketing.

34.    In other words, first-party data (e.g., email, gender, age, and types of lab tests purchased) that is rerouted to Tealium is thereafter used to create a customer profile. This profile is then matched with additional data from platforms like Google or Facebook to target Quest customers with personalized ads based on the customer's activity on QuestHealth.com. For instance, a person who purchased an HIV test may receive one type of advertisement, while someone who ordered a pregnancy test may see another.

35.    Tealium's Customer Data Platform also includes a feature called Predict ML. According to Tealium, this tool allows business users, even those without data science expertise, to develop models that predict customer behavior using machine

learning.[6] Specifically, it enables companies to analyze first-party data to forecast future purchasing decisions.

36.     For Quest customers, this means their personal information is incorporated into machine learning models designed to predict future lab test purchases. Unfortunately, once customer data is used to train these models, it cannot be effectively removed or deleted—the private information becomes inextricably embedded within the algorithms' parameters.

## FACTS SPECIFIC TO PLAINTIFF

37.     In July 2024, Plaintiff registered an account on QuestHealth.com.

38.     After entering her information, Plaintiff clicked a button captioned "Register" next to text that reads: "By clicking 'Register', I agree to the Terms and Conditions." Clicking on the Terms and Conditions hyperlink opens a pop-up screen with terms. Buried within the terms is the following provision:

39.

> "4. Use of Your Information/Privacy Notice
> If You create, transmit, or display information while using
> the Account Service, You may provide only information
> that You own or have the right to use. Quest Consumer will
> only use information You provide as permitted by the
> Privacy Notice, and applicable law. The purpose of Our
> Privacy Notice is to identify the information We collect
> online, the steps We take to protect it and Your choices
> regarding how that information is used."

---

[6] https://tealium.com/products/tealium-predict-machine-learning/ (last viewed October 21, 2024).

40.     The second reference to the term 'Privacy Notice' in this provision is actually a hyperlink, but it is displayed in a non-descript, muted green color that fails to contrast with the background such that, even when looking closely, does not appear to be a hyperlink (even though one can click on it). Furthermore, unlike all other hyperlinks on QuestHealth.com, the term is not underlined. Additionally, the Terms and Conditions do not require any manifestation of consent, agreement, or acceptance of this provision before completing registration.

41.     After registering her account, Plaintiff explored various lab tests on QuestHealth.com before purchasing a Blood Type Test for $35.

42.      On multiple occasions, the Tealium software operating on QuestHealth.com caused Plaintiff's web browser to reroute her communications to Tealium. This occurred during account registration, subsequently while browsing QuestHealth.com, and when viewing her lab test results.

43.     On information and belief, the Plaintiff's communications that were rerouted to Tealium included the following 15 data points: (a) Quest customer ID, (b) Quest test specimen ID, (c) Quest test name, (d) Quest test order number, (e) email, (f) order total, (g) in-person test, (h) URLs visited on QuestHealth.com, (i) city, (j) state, (k) zip code, (l) approximate geographical coordinates, (m) gender, (n) birth year, and (o) credit card provider.

44.     Plaintiff did not intend for any party besides Quest to receive the

contents of her communications on QuestHealth.com, nor did she consent to having her first-party information rerouted to Tealium.

## CLASS ACTION ALLEGATIONS

45.    **Class Definitions**: Plaintiff Maria Oliveira da Silva brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class (collectively the "Class") of all others similarly situated, defined as follows:

> **Class**: All individuals who registered an account on QuestHealth.com and had the contents of their communications rerouted to third-party Tealium.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46.    **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has many thousands of users who fall into the definition of the Class. Class members can be identified through

Defendant's records.

47.    **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a)    Whether Defendant used software to cause its customers' web browsers to reroute first-party data to Tealium and thus to intercept the contents of communications from Plaintiff and the Class;
>
> (b)    Whether Defendant used a device to cause Plaintiff and the Class's web browsers to reroute their first-party data to Tealium;
>
> (c)    Whether Defendant obtained consent from Plaintiff and the Class to intercept their communications; and
>
> (d)    Whether Defendant used Plaintiff and the Class's information for targeted ads on additional platforms and in developing and training machine learning models.

48.    **Typicality**: Plaintiff's claims are typical of the claims of members of the Class in that Plaintiff, like all members of the Class, had her information unlawfully intercepted and has been injured by Defendant's misconduct at issue.

49.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the members of the Class sustained injuries and damages as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

50.    **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

51.    Plaintiff reserves the right to revise the foregoing "Class Allegations"

and "Class Definitions" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION

### Violation of Wiretap Act
### 18 U.S.C. § 2510, *et seq.*
### (On behalf of Plaintiff and the Class)

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     The Wiretap Act generally prohibits a company from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

54.     In particular, the Wiretap Act protects the "contents" of electronic communications, which means "information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8).

55.     Defendant intentionally intercepted and/or endeavored to and/or procured another person to intercept the contents of "electronic communication[s]" in violation of 18 U.S.C. § 2511(1)(a) by implementing software on QuestHealth.com to cause Plaintiff and the Class Members' web browsers to reroute their first-party data to third-party Tealium without their knowledge or consent.

56.     Defendant's interceptions occurred contemporaneously and secretly, as Plaintiff and the Class Members' communications were rerouted to Tealium within

milliseconds of pages loading on QuestHealth.com

57.    Plaintiff and the Class Members' intercepted first-party data are
considered "contents" as defined by the Wiretap Act. This includes the following
information that was rerouted to Tealium: (a) Quest customer ID, (b) Quest test
specimen ID, (c) Quest test name, (d) Quest test order number, (e) email, (f) order
total, (g) in-person test, (h) URLs visited on QuestHealth.com, (i) city, (j) state, (k)
zip code, (l) approximate geographical coordinates, (m) gender, (n) birth year, and (o)
credit card provider.

58.    The Tealium JavaScript—the "tracking pixel"—that Quest embedded on
QuestHealth.com which caused Plaintiff and the Class Members' web browsers to
send their first-party communications to Tealium instead of Quest constitutes a
"device" under the Wiretap Act. 18 U.S.C. § 2510(5).

59.    The party exception under 18 U.S.C. § 2511(2)(d) does not apply to the
Defendant. Plaintiff and Class Members entered their personal information and
purchased lab tests on Quest's website without knowledge or consent that their first-
party data would be quietly and surreptitiously rerouted to a third-party, Tealium.
Tealium was not the intended recipient of these communications; rather, Quest
procured Tealium to intercept such communications. Moreover, Plaintiff and Class
Members' information was further processed in impermissible ways, such as

matching their data with information from platforms like Google and Facebook for targeted advertising, and via machine learning by Tealium.

60.     In the alternative, the party exception under 18 U.S.C. § 2511(2)(d) does not apply because Defendant intercepted Plaintiff and the Class Members' communications in violation of 42 U.S.C. § 1320d-6 of the Health Insurance Portability and Accountability Act ("HIPAA").

61.     Section 1320d-6 of HIPAA makes it a crime for a company to knowingly disclose "individually identifiable health information" to a third-party. This is information that: (A) is created or received by a health care provider and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and either (i) identifies the individual; or (ii) there is a reasonable basis to believe that the information can be used to identify the individual. 42 U.S.C. § 1320d-6.

62.     Quest rerouted Plaintiff and the Class Members' individually identifiable health information as defined by HIPAA to Tealium without their knowledge or consent. As detailed herein, this includes users' email addresses, gender, and physical address information, along with lab tests viewed and purchased by customers. Defendant knew, or should have known, that it was exploiting its position and brand name, Quest, as a HIPAA compliant lab testing provider to entice

customers into submitting their sensitive health information. By redirecting Plaintiff and the Class Members' data to a third-party for targeted marketing and machine learning purposes, Defendant violated HIPAA's Section 1320d-6, breaching its obligation to protect patient privacy.

63.     Plaintiff and the Class suffered harm as a result of Defendant's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(c)(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of New Jersey Wiretapping and Electronic Surveillance Control Act
### N.J. Stat. Ann. § 2A:156A-24
### (On behalf of Plaintiff and the Class)

64.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65.     Under the New Jersey Wiretap Act, "Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [the Act] shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person." N.J. Stat. Ann. § 2A:156A-24.

66.     Intercept means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device. N.J. Stat. Ann. § 2A:156A-2.

67.     Defendant intentionally intercepted and/or endeavored to and/or procured another person to intercept the contents of "electronic communication[s]" in violation of N.J. Stat. Ann. § 2A:156A-24 by implementing software on QuestHealth.com to cause Plaintiff and the Class Members' web browsers to reroute their first-party data to Tealium without their knowledge or consent.

68.     Defendant's interceptions occurred contemporaneously and secretly, as Plaintiff and the Class Members' communications were rerouted to Tealium within milliseconds of pages loading on QuestHealth.com.

69.     Plaintiff and the Class Members' intercepted first-party data are considered "contents". This includes the following information that was rerouted to Tealium: (a) Quest customer ID, (b) Quest test specimen ID, (c) Quest test name, (d) Quest test order number, (e) email, (f) order total, (g) in-person test, (h) URLs visited on QuestHealth.com, (i) city, (j) state, (k) zip code, (l) approximate geographical coordinates, (m) gender, (n) birth year, and (o) credit card provider.

70.     The Tealium JavaScript—the "tracking pixel"—that Quest embedded on QuestHealth.com that caused Plaintiff and the Class Members' web browsers to send their first-party communications to Tealium instead of Quest constitutes a "device".

71.     Plaintiff and Class Members viewed the QuestHealth.com website, entered their personal information, and purchased lab tests on Quest's website without knowledge or consent that their first-party data would be quietly and surreptitiously rerouted to Tealium. Tealium was not the intended recipient of these communications; rather, Quest procured the company to intercept them. Moreover, Plaintiff and Class Members' information was further processed in impermissible ways, such as matching their data with information from platforms like Google and Facebook for targeted advertising, and via machine learning by Tealium.

72.     Additionally, Defendant intercepted Plaintiff and the Class Members' communications in violation of 42 U.S.C. § 1320d-6 of the Health Insurance Portability and Accountability Act ("HIPAA").

73.     Section 1320d-6 of HIPAA makes it a crime for a company to knowingly disclose "individually identifiable health information" to a third-party. This is information that: (A) is created or received by a health care provider and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and either (i) identifies the individual; or (ii) there is a reasonable basis to believe that the information can be used to identify the individual. 42 U.S.C. § 1320d-6.

74.    Quest rerouted Plaintiff and the Class Member's individually identifiable health information as defined by HIPAA to Tealium without their knowledge or consent. As detailed herein, this includes users' email addresses, gender, and physical address information, along with lab tests viewed and purchased by customers. Defendant knew, or should have known, that it was exploiting its position and brand name, Quest, as a HIPAA compliant lab testing provider to entice customers into submitting their sensitive health information. By redirecting Plaintiff and the Class Members' data to a third-party for targeted marketing and machine learning purposes, Defendant violated HIPAA's Section 1320d-6, breaching its obligation to protect patient privacy.

75.    Plaintiff and the Class suffered harm as a result of Defendant's violations of the New Jersey Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages, whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maria Oliveira da Silva individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying the Class as defined above, appointing Maria Oliveira da Silva as the representative of the Class, and appointing her counsel as Class Counsel;

(b)     An order declaring that Defendant's actions, as set out above violate the Wiretap Act, 18 U.S.C. § 2510;

(c)     An order declaring that Defendant's actions, as set out above violate the New Jersey Wiretap Act, N.J. Stat. Ann. § 2A:156A-24;

(d)     An injunction requiring Defendant to cease all unlawful activities;

(e)     An award of statutory damages, disgorgement of profits, punitive damages, costs, and attorneys' fees;

(f)     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

## CERTIFICATION OF NO OTHER PENDING ACTIONS

Pursuant to L.Cv.R. 11.2, Plaintiff hereby certifies the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding involving the matter in controversy which is the subject of this action.

Respectfully submitted,


Dated: November 27, 2024          By: _____

LOMURRO MUNSON, LLC
Matthew A. Schiappa
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, New Jersey 07728
Tel: (732) 414-0300
Fax: (732) 431-4043
Email: mschiappa@lomurrolaw.com

*One of Plaintiff's Attorneys*

Michael Ovca*
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*\*Pro hac vice admission to be sought*

*Counsel for Plaintiff and the Putative Class*