**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA OLIVEIRA DA SILVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST CONSUMER, INC.,<br><br>Defendant. | Case No. 2:24-cv-10791<br><br>District Judge Esther Salas<br><br>Motion Day: May 5, 2025 |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT QUEST CONSUMER INCORPORATED'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Plaintiff Does Not Dispute the Parties Formed a Contract ..... 3

1. Plaintiff denied accepting the Registration Terms ..... 3

2. Plaintiff raises challenges delegated to the arbitrator ..... 4

3. The Purchase Terms are not internally inconsistent ..... 6

4. Plaintiff’s individual damages fall within the cap ..... 8

B. There are No Relevant Inconsistencies Between the Registration and Purchase Terms ..... 9

C. The Registration and Purchase Terms Should Be Read Together ..... 11

D. Discovery Regarding Arbitrability is Unnecessary ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
826 F.2d 173 (3d Cir. 1988) ....................4

*Erasmus v. LegalZoom.com, LLC*,
No. 24-7831, 2025 WL 1122237 (D.N.J. Apr. 15, 2025) ....................9

*Field Intelligence Inc. v. Xylem Dewatering Sols. Inc.*,
49 F.4th 351 (3d Cir. 2022) ....................5, 13

*Jacobowitz v. Experian Info. Sols., Inc.*,
No. 19-20120, 2020 WL 5700756 (D.N.J. Sept. 23, 2020)....................4

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019) ....................5

*Kant v. Seton Hall Univ.*,
No. 03-6135, 2008 WL 65159 (D.N.J. Jan. 4, 2008) ....................14

*Kernahan v. Home Warranty Adm'r of Florida, Inc.*,
236 N.J. 301 (2019) ....................5, 10, 11

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....................4, 9

*Manahawkin Convalescent v. O'Neill*,
217 N.J. 99 (2014) ....................7

*NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.*,
24 A.3d 777 (N.J. Super. Ct. App. Div. Aug. 2, 2011) ....................5, 11

*Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*,
693 F.3d 417 (3d Cir. 2012) ....................13

*Premier Orthopaedic Assoc. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*,
675 F. Supp. 3d 487 (D.N.J. 2023)....................1

*Quality Improvement Consultants, Inc. v. Williams*,
129 Fed. Appx 719 (3d Cir. 2005)....................8

*Raposa v. Vokswagen Grp. Of Am., Inc.*,
No. 22-5896, 2024 WL 1173042 (D.N.J. Mar. 19, 2024) (Salas, J.) ................14

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
938 F.3d 515 (3d Cir. 2019) ........................................................................4

*Rockel v. Cherry Hill Dodge*,
847 A.2d 621 (N.J. Super. Ct. App. Div. 2004) ...........................................5, 11

*Rosenberg v. D. Kaltman & Co.*,
28 N.J. Super. 459 (Ch. 1953) ......................................................................14

*Rosenthal v. Rosenblatt*,
2014 WL 5393243 (N.J. Super. Ct. App. Div. Oct. 24, 2014).....................5, 7, 8

*Russo v. Chugai Pharma USA, Inc.*,
2021 WL 4204948 (N.J. Super. Ct. App. Div. Sept. 16, 2021)...........................8

*Santomeno v. U.S. Min. Prods. Co.*,
No. 2:12-3782, 2013 WL 103392 (D.N.J. Jan. 7, 2013) .....................................7

*Souza-Bastos v. Fed. Auto Brokers, Inc.*,
2016 WL 3199488 (N.J. Super. Ct. App. Div. June 10, 2016) .....................5, 11

*Stabile v. Macy's, Inc.*,
751 F. Supp. 3d 429 (D.N.J. 2024)..............................................................5, 7

*Vinella v. United Ins. Co. of Am.*,
No. 23-0351, 2023 WL 8926990 (D.N.J. Dec. 27, 2023) (Salas, J.) ................15

*Warren v. Birchwood Adult Day Care, LLC*,
No. A-1903-13T3, 2015 WL 3998859 (N.J. App. Div. July 2, 2015) ..........................................................................................................12

*Young v. Experian Info. Sols., Inc.*,
119 F.4th 314 (3d Cir. 2024) ....................................................................5, 15

**Statutes, Rules & Regulations**

AAA Consumer Arbitration Rules, R-44(a).......................................................6, 7

Defendant Quest Consumer Incorporated ("Quest"), by and through its undersigned counsel, respectfully submits the following reply in further support of Quest's motion to compel arbitration (the "Mot.") and in response to Plaintiff's Opposition (the "Opp."), and states as follows:

## I. INTRODUCTION

It is undisputed that the parties have a binding contract that includes delegation of disputes to an arbitrator. Nowhere in Plaintiff's Opposition does she dispute that when she checked the box and made her purchase on the Website, she formed a binding contract with Quest. Plaintiff's allegations turn on information about the test she purchased through the Website being allegedly shared with a third party. Thus, Plaintiff's claims, as well as any challenge to the scope of the parties' agreement, must be heard by the arbitrator and not the Court.

Unable to dispute those dispositive facts, Plaintiff introduced a separate set of website terms—the unverified, unauthenticated "Registration Terms,"[1]—arguing that those cover the claims arising out of and relating to Plaintiff's purchase. That is

[1] Defined terms have the same meaning as in the opening brief; however, to avoid confusion, Quest adopts the phrase "Purchase Terms" for the Terms, and "Registration Terms" for the document introduced by Plaintiff in the Opposition as Ex. 1-B. The Registration Terms, however, lack any authentication, source, or validation as to their relevance or accuracy; the Opposition offers no valid basis for the Court to rely on that document. *See Premier Orthopaedic Assoc. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492 (D.N.J. 2023) ("Because [plaintiff] disputes the [document]'s authenticity, this Court declines to consider it.").

false. The Motion focused on the Purchase Terms because Plaintiff is a purchaser who alleges injuries arising from and related to the information about her purchase and testing. Further, in her Complaint, Plaintiff denied that she accepted the Registration Terms (Compl. ¶ 40), in direct contradiction of the Opposition's suggestion that those terms control. The Registration Terms do not alter the parties' relationship and Plaintiff's arguments are, at most, a red herring that seeks to distract the Court from the undisputed fact that Plaintiff agreed to the Purchase Terms which contain an arbitration clause delegating all disputes to the arbitrator. The Court's analysis should stop there.

Should the Court opt to proceed, it should compel arbitration. First, Plaintiff's challenges to the Purchase Terms lack merit as those terms are not internally inconsistent and the individual damage cap is not implicated. Second, Plaintiff misstates the Registration Terms to argue they control. Because the scope of the Registration and Purchase Terms do not overlap, the two agreements can be read together, and one need not supersede another. Third, even if the Purchase and Registration Terms do overlap, the subsequently signed Purchase Terms supersede the Registration Terms. That is especially true given that Plaintiff's Complaint denies accepting the Registration Terms while she does not dispute accepting the Purchase Terms. Thus, even if the Court assesses for itself the scope and enforcement of the parties' agreement, the claims should be arbitrated.

## II. ARGUMENT

### A. Plaintiff Does Not Dispute the Parties Formed a Contract

The Opposition does not challenge contract formation. It remains undisputed that Plaintiff went to the Website and accepted the Purchase Terms. (Mot. 3–4, Brunelle Decl. ¶¶ 6-8.) The Opposition's assertion that she accepted the Registration Terms and such terms control the parties' relationship are directly contradicted by the Complaint. Plaintiff's acceptance of the Purchase Terms is undisputed. To the extent Plaintiff challenges the Purchase Terms for alleged internal inconsistencies (Opp. 17–18) and the maximum damages permitted (Opp. 18–19), such arguments relate to scope and enforceability and are for the arbitrator to decide. (Mot. 12–13).

#### 1. Plaintiff denied accepting the Registration Terms

The Opposition's assertion that "Plaintiff registered for an account and accepted the Registration Terms" (Opp. 6; citing Compl. ¶¶ 7, 37) misstates Plaintiff's own allegations. The pleading paragraphs cited in the Opposition allege that Plaintiff "is a natural person and citizen of the State of California" (*id.* ¶ 7), and "[i]n July 2024, Plaintiff registered an account on QuestHealth.com." (*Id.* ¶ 37.) That's it. Neither paragraph references the Registration Terms. Rather, Plaintiff's Complaint directly contradicts the Opposition in stating that "the [Registration] Terms and Conditions do not require any manifestation of consent, agreement, or acceptance of this provision before completing registration." (*Id.* ¶ 40.) Despite her argument in the Opposition (at 6), the Complaint alleges that Plaintiff never accepted

the Registration Terms (Compl. ¶ 40). Plaintiff's effort to refashion her allegations in the Opposition is improper and should not be credited.[2] What Plaintiff does not and cannot dispute is that she made a purchase on the Website (*id.* ¶ 41), and that purchase included acceptance of the Purchase Terms. (Brunelle Decl. ¶¶ 6-8.) The Purchase Terms, alone, are a binding contract.

### 2. Plaintiff raises challenges delegated to the arbitrator

Plaintiff relies on *In re Remicade (Direct Purchaser) Antitrust Litig.* (Opp. 8), which confirms that when deciding whether an arbitration clause applies to a certain type of controversy (i.e. its scope) "due regard must be given to the federal policy favoring arbitration." 938 F.3d 515, 520 (3d Cir. 2019) (reversing to compel arbitration because claims arose out of or related to the agreement). Because Plaintiff alleges that she made a purchase, which necessarily required her to assent to the Purchase Terms, and she does not rebut the formation of the contract in her Opposition, the presumption applies. "The Supreme Court has repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Id.* at 522 (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019)).

---

[2] *See Jacobowitz v. Experian Info. Sols., Inc.*, No. 19-20120, 2020 WL 5700756, at *2 (D.N.J. Sept. 23, 2020); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 826 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

The Purchase Terms contain a delegation clause and none of the case law cited in the Opposition undermines the well-established requirement that delegation clauses must be honored. The Opposition cites eight cases that discuss arbitrability; however, each case focused on contract formation and *none* discussed (much less supports ignoring) a delegation clause.[3]

Here, the Purchase Terms' delegation of disputes to be heard under the AAA Rules requires the arbitrator decide any questions regarding arbitrability. (Mot. 12–13). "[S]ince [Plaintiff] challenged only the arbitration agreement's scope—rather than its existence or validity—and since arbitrability determinations, including scope, have been delegated to an arbitrator, nothing is left for the District Court to decide pursuant to the FAA." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 322 (3d Cir. 2024). Plaintiff's challenges to the scope of the clause are properly delegated to the arbitrator. However, if the Court opts to evaluate her arguments, it should find that arbitration is the appropriate forum.

[3] *See Field Intelligence Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351 (3d Cir. 2022); *Jaludi v. Citigroup*, 933 F.3d 246 (3d Cir. 2019); *Stabile v. Macy's, Inc.*, 751 F. Supp. 3d 429 (D.N.J. 2024); *Kernahan v. Home Warranty Adm'r of Florida, Inc.,* 236 N.J. 301 (2019); *Rockel v. Cherry Hill Dodge*, 847 A.2d 621 (N.J. Super. Ct. App. Div. 2004); *NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.*, 24 A.3d 777 (N.J. Super. Ct. App. Div. Aug. 2, 2011); *Souza-Bastos v. Fed. Auto Brokers, Inc.*, 2016 WL 3199488 (N.J. Super. Ct. App. Div. June 10, 2016); *Rosenthal v. Rosenblatt*, 2014 WL 5393243 (N.J. Super. Ct. App. Div. Oct. 24, 2014).

### 3. The Purchase Terms are not internally inconsistent

By presenting individual sentences out of context, the Opposition argues that the Purchase Terms' requirement to arbitrate disputes cannot be squared with a party's ability to seek injunctive relief through a judicial forum. (Opp. 17.) The provisions are not inconsistent, and, on their plain language, simply permit an arbitrator the authority to award, when appropriate, the relief plaintiff seeks. Even under Plaintiff's own reading, the Purchase Terms contain no inconsistencies.

Plaintiff argues that Paragraph 26 of the Purchase Terms lists relief she can seek from a judicial forum (Opp. 17), but that sentence simply confirms that she can seek all available relief from the arbitrator. The sentence reads:

> It is accordingly agreed that in addition to any other remedy to which You or We may be entitled at law or in equity, such party will be entitled without notice or bond, to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction.

(Opp. Ex. 1-A, Purchase Terms § 26.) That language is not inconsistent with the agreement to arbitrate disputes that precedes it. Plaintiff's interpretation seeks to place a comma after "and any other relief available," to suggest that these are forms of relief that *only* "a court of competent jurisdiction" can grant. Not so. Rule R-44(a) of the AAA Consumer Arbitration Rules confirms that "[t]he arbitrator may grant any remedy, relief, or outcome that the parties could have received in court." Paragraph 26 of the Purchase Terms mirrors the authority defined in the AAA Rules.

"Contracts should be read as a whole in a fair and common sense manner." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014). Thus, "[i]f the language of the contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Id.* The Purchase Terms allow the arbitrator to award any form of relief "that may be available from a court of competent jurisdiction," including any remedy "at law or in equity." Put differently, there is nothing that Plaintiff has identified as available from the Court which is unavailable from the arbitrator. *See* R-44(a); S*antomeno v. U.S. Min. Prods. Co.*, No. 2:12-3782, 2013 WL 103392, at *9 (D.N.J. Jan. 7, 2013) (confirming award because the "arbitrator acted within the authority that the [agreement] granted him: all of the power of a court of law and equity"). Plaintiff's tortured effort to read Paragraph 26 as limiting the arbitrator's power is in direct contravention to the plain language and common sense reading of the provision.

Plaintiff is correct that there are circumstances where internal inconsistencies render an arbitration agreement unenforceable (Opp. 17–18); however, those cases are materially distinguishable from the circumstances and language presented here. Plaintiff cites examples where, unlike here, the provisions cannot be reconciled. For example, in *Stabile v. Macy's, Inc.* (Opp. 18), the arbitration provision was both mandatory and at the employee's discretion. 751 F. Supp. 3d at 434. Similarly, in *Rosenthal v. Rosenblatt* (Opp. 18), the Court rejected arbitration because the clause

at issue failed to identify controlling terms or a provider. 2014 WL 5393243, at *4. Here, the Purchase Terms designate the American Arbitration Association and its Consumer Arbitration Rules. (Brunelle Decl. ¶ 9.)

Even if Plaintiff's reading was accurate (it is not), a provision that allows for different forms of relief to be sought in different venues is not an irreconcilable tension. *See, e.g., Quality Improvement Consultants, Inc. v. Williams*, 129 Fed. Appx 719, 723 (3d Cir. 2005) (finding that some claims between the parties must be arbitrated, even though some claims were already being litigated); *Russo v. Chugai Pharma USA, Inc.*, 2021 WL 4204948 (N.J. Super. Ct. App. Div. Sept. 16, 2021) (enforcing an arbitration agreement that permitted different relief sought from arbitrator and court). The Purchase Terms do not contain inconsistent provisions that would render the arbitration agreement unenforceable.

**4. Plaintiff's individual damages fall within the cap**

Plaintiff similarly presents a strained interpretation from a cherry-picked sentence in the Purchase Terms to argue that her dispute is over $750,000 and must be litigated, even if that damages threshold is reached by aggregation of putative class damages. (Opp. 18, 19.) Plaintiff does not allege any actual damages and does not cite any personal damages even approaching $750,000. Rather, Plaintiff asks the Court to read out of the parties' agreement the language restricting that damages assessment to disputes between "You and Us" or "We," which limits the provision

to disputes between the Plaintiff and Quest. (Brunelle Decl. ¶¶ 9, 10.) That same phrasing of the individualized nature of the dispute analysis appears no less than four times in the provision, illustrating an intent to arbitrate individual disputes.

"The Supreme Court has consistently reiterated that there is a 'fundamental' difference between class arbitration and the individualized form of arbitration envisioned by the FAA.'" *Erasmus v. LegalZoom.com, LLC*, No. 24-7831, 2025 WL 1122237, at *6 (D.N.J. Apr. 15, 2025). Class arbitration sacrifices the principal benefits of arbitration and makes the process slower, more costly, and less efficient. *Lamps Plus*, 587 U.S. at 185. For that reason, consent to participate in class arbitration cannot be read into an arbitration provision absent an affirmative "contractual basis for concluding that the party *agreed* to do so." *Id.* (emphasis in original). The individualized nature of the Purchase Terms' arbitration clause illustrates the parties' intent to arbitrate disputes between the purchaser and Quest; thus, the damages cap must be read as a calculation of individual damages to honor binary arbitration.

### B. <u>There are No Relevant Inconsistencies Between the Registration and Purchase Terms</u>

Plaintiff argues that "contradictory instructions across the documents" render the Purchase Terms unenforceable. (Opp. 14-16.) But the terms are not inconsistent, both can be enforced simultaneously, and the Registration Terms do not alter the import or impact of the Purchase Terms.

Plaintiff is correct that the Motion "does not substantively address the Registration Terms at all, nor does it grapple with their interplay." (Opp. 16.) The terms are separate agreements that address separate services offered by Quest. Contrary to the Opposition's assertion, the fact that Plaintiff registered her account on the Website and made her purchase on the same day is not sufficient to create an integrated contract. (Opp. 12, 14.) The Registration Terms purport to "appl[y] to your use of the Account Service," (Opp., Ex. 1-B, § 1) while the Purchase Terms govern issues relevant to a purchaser. (Brunelle Decl. ¶¶ 9, 10.) Just as Plaintiff could have registered her account and never made a purchase, Plaintiff could have made a purchase from Quest without registering for a Website account. The fact that Plaintiff did both, on the same date, is of no moment.

The Purchase Terms are neither visually nor substantively deficient. In fact, the Opposition concedes that "[t]he issue before the Court is not the typical arbitration dispute about whether fonts were big enough, hyperlinks were highlighted, or a button situated appropriately." (Opp. 16.) Despite that, Plaintiff asks this Court to adopt the logic of decisions that turned on unreadable terms. For example, Plaintiff argues Quest's "terms cannot be read to provide clarity to a consumer that she was agreeing to arbitration." (Opp. 14–15 (quoting *Kernahan v. Home Warranty Administrator of Florida, Inc.*, 236 N.J. 301(2019)).) But the terms in *Kernahan* were (undisputedly) in smaller font than was permitted by law and

(confusingly) buried in a section labeled as "mediation." *Id.* at 322–23. Much like the "distinct and different procedures" that the *Kernahan* court found between mediation and arbitration, the Registration and Purchase Terms govern different aspects of the Website user's experience and are not a single integrated contract.

Plaintiff also relies on distinguishable cases that discuss multiple-part agreements where the documents were executed as part of a single transaction. For example, in *Souza-Bastos v. Fed. Auto Brokers, Inc.*, the plaintiff signed "a stack of form documents," with conflicting dispute resolution provisions, to purchase a car. (Opp. 15; citing 2016 WL 3199488, at *1–2.) Had Ms. Souza-Bastos stopped after the first form, the transaction would not have occurred, and she would not have received the vehicle. *Id.*; *see also* (Opp. 15 citing *NAACP of Camden Cnty. E*, 24 A.3d at 797 (finding car purchase documents contained "vague and inconsistent provisions" that could not be enforced)); and *Rockel*, 368 N.J. Super. at 583 (denying arbitration where dissonant terms in a transaction documented in several agreements was unenforceable). Unlike a car purchase, Plaintiff's interactions with Quest were not one unified transaction. The Purchase Terms are enforceable, and the Registration Terms do not alter that conclusion.

### C. <u>The Registration and Purchase Terms Should Be Read Together</u>

Plaintiff incorrectly argues that "[t]he Registration Terms govern the user's complete use of their account on the website" (Opp. 10) and supersede the Purchase

Terms (Opp. 13). The Opposition is both factually and legally wrong.

First, Plaintiff is wrong that the Registration Terms' language of "replacing any prior agreements" does or could nullify the Purchase Terms. (Opp. 13.) It is undisputed that the Purchase Terms were presented and accepted *after* the Registration Terms. So, even if the terms were considered inconsistent, the Purchase Terms are a subsequent, not "prior," agreement. Plaintiff's argument violates the precept that "terms . . . should not be read in isolation and should not be used to twist and distort the words' obvious meaning in the minds of the parties." *Warren v. Birchwood Adult Day Care, LLC*, No. A-1903-13T3, 2015 WL 3998859, at *4 (N.J. App. Div. July 2, 2015). Even under Plaintiff's own approach, the arbitration term in the later Purchase Terms remains unmodified by the prior Registration Terms.

Second, while Plaintiff asserts that the Registration Terms "govern the user's complete use of their account on the website," (Opp. 10) that overstates the express language. Rather, Section 1 of the Registration Terms confirm that Quest has "other Web sites and services that may be covered by different terms and conditions of use." (Opp., Ex. B-1 § 1.) Thus, while the Registration Terms supersede any prior agreements, they also contemplate a user being subject to additional terms, including if (like here) they subsequently make a purchase. Consistent with the Registration Terms, the Purchase Terms govern Plaintiff's claims arising from her purchase.

Third, Plaintiff relies on *Field Intelligence* to argue that since "the later contract does not even mention its predecessor, let alone expressly indicate any intent to replace that earlier agreement," the Purchase Terms cannot supersede the Registration Terms. (Opp. 14.) However, Plaintiff fails to note that the Third Circuit went on to find that the two agreements at issue, like here, did not conflict and could both be enforced simultaneously. *Field Intelligence v. Xylem Dewatering Sols. Inc.,* 49 F.4th 351, 359 (3d Cir. 2022). The court said:

> The only potential inconsistency between these documents is their differing dispute-resolution provisions. . . . But those provisions are reconcilable. Each is expressly limited to the subject matter of its agreement. . . . The result: claims involving the first agreement are heard by an arbitrator, while the claims involving the second are heard in court.

*Id.* Similarly, claims related to Plaintiff's purchases and Quest's handling of her purchase-related data must be arbitrated, even if other potential claims might not be subject to the agreement to arbitrate. Despite that natural reading, Plaintiff instead asks the Court to find that "[a]ny purchases that users make on QuestHealth.com undisputedly relate to an account service," (Opp. 12); but Plaintiff's interpretation would render the Purchase Terms entirely meaningless, which cannot stand. *See Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 430 (3d Cir. 2012) ("To interpret the contract that way would violate a cardinal rule of contractual interpretation that counsels against rendering words or provisions meaningless."). Plaintiff's allegations focus on information related to her purchase and the Purchase

Terms control "any dispute between You (purchaser) and Quest." (Brunelle ¶ 9.) Plaintiff improperly asks to read the Purchase Terms out of existence, including for her purchase-related claim.

Fourth, even if Plaintiff was right that the Purchase and Registration Terms conflict, the Purchase Terms control. "The general rule is that a subsequent contract covering the same subject matter and made by the same parties, but containing terms inconsistent with the former contract so that the two cannot stand together, rescinds, supersedes and substitutes for the earlier contract and becomes the only agreement on the part of the parties on the subject matter." *Rosenberg v. D. Kaltman & Co.,* 28 N.J. Super. 459, 463–64 (Ch. 1953). That is true even if the second agreement does not expressly state its intent to replace the first. *Kant v. Seton Hall Univ.*, No. 03-6135, 2008 WL 65159, at *7 (D.N.J. Jan. 4, 2008). Thus, if there is a conflict, the later-accepted Purchase Terms (with its arbitration clause) should control.

**D. Discovery Regarding Arbitrability is Unnecessary**

In a one-sentence, conclusory request in the closing paragraph, Plaintiff asks the Court for the alternative remedy of discovery but does not identify what additional information would be helpful to the Court in evaluating arbitrability, a task prescribed to the arbitrator. (Opp. 19.)

Discovery concerning arbitrability is traditionally limited to whether a contract to arbitrate was formed. *See, e.g., Raposa v. Vokswagen Grp. Of Am., Inc.*,

No. 22-5896, 2024 WL 1173042, at *7 (D.N.J. Mar. 19, 2024) (Salas, J.) (ordering "discovery because the Amended Complaint lacks the requisite clarity to establish that the parties agreed to arbitrate Plaintiffs' claims"); *Vinella v. United Ins. Co. of Am.*, No. 23-0351, 2023 WL 8926990, at *4 (D.N.J. Dec. 27, 2023) (Salas, J.) (ordering limited discovery, in part, because Defendants did "not otherwise argue that the Arbitration Agreement is integral to or relied upon in the Complaint"). Plaintiff relies on *Guidotti,* but the Third Circuit has confirmed that "*Guidotti*'s call for limited discovery into arbitrability is best understood as being itself limited." *Young,* 119 F.4th at 319. Discovery is appropriate when "warranted, which will often be the case but not always," because "[i]n the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on a motion to compel." *Id*. at 319–20. That is true here.

It is undisputed that Plaintiff made a purchase, accepted the Purchase Terms, and relies on information submitted during her purchase to support her claims. (*See* Compl. ¶¶ 41-43.) Because both the formation and terms of the relevant contract are known and undisputed, discovery of the type at issue in *Guidotti* is unnecessary.

## III. CONCLUSION

For the foregoing reasons, and the arguments set forth in the moving papers, Quest respectfully requests that the Court compel Plaintiff to arbitrate her claims and stay this action pending the outcome of that proceeding.

Respectfully submitted,

Dated: April 28, 2025

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Paul A. Rosenthal*
Paul A. Rosenthal (NJ Bar No. 024912006)
Krista N. Hartrum (NJ Bar No. 401902022)
600 Campus Drive
Florham Park, NJ 07932
Tel: 973-549-7000
paul.rosenthal@faegredrinker.com
krista.hartrum@faegredrinker.com

*Attorneys for Defendant Quest Consumer, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2025, the foregoing was served on Plaintiff's counsel via email, pursuant to the Court's Order dated January 31, 2025 (Dkt. No. 14), at the following address:

Matthew A. Schiappa, Esq., mschiappa@lomurrolaw.com

*/s/ Paul A. Rosenthal*

Paul A. Rosenthal