**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA OLIVEIRA DA SILVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST CONSUMER, INC.,<br><br>Defendant. | Case No. 2:24-cv-10791<br><br>District Judge Esther Salas<br><br>Motion Day: May 18, 2026 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT QUEST CONSUMER INCORPORATED'S RENEWED MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff Does Not Dispute the Parties Formed a Contract ..... 2

1. Plaintiff denied accepting the Registration Terms ..... 3

2. Plaintiff raises challenges delegated to the arbitrator ..... 4

B. The Purchase Terms Control and Require Arbitration of Disputes ..... 6

C. The Registration and Purchase Terms Should Be Read Together ..... 9

D. Plaintiff's individual damages fall within the cap ..... 12

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Atl. Northern Airlines v. Schwimmer*,
12 N.J. 293 (1953) ....................14

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ....................3, 10

*Erasmus v. LegalZoom.com, LLC*,
2025 WL 1122237 (D.N.J. Apr. 15, 2025)....................13

*Field Intelligence Inc. v. Xylem Dewatering Sols. Inc.*,
49 F.4th 351 (3d Cir. 2022) ....................4, 5, 6

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co.*,
188 F.3d 130 (3d Cir. 1999) ....................15

*Jacobowitz v. Experian Info. Sols., Inc.*,
2020 WL 5700756 (D.N.J. Sept. 23, 2020)....................3

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019) ....................4

*Kant v. Seton Hall Univ.*,
2008 WL 65159 (D.N.J. Jan. 4, 2008)....................12

*Kernahan v. Home Warranty Adm'r of Florida, Inc.*,
236 N.J. 301 (2019) ....................4

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....................4, 13, 14

*NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.*,
24 A.3d 777 (N.J. Super. Ct. App. Div. Aug. 2, 2011) ....................5, 8

*Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*,
693 F.3d 417 (3d Cir. 2012) .................... 10-11

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
938 F.3d 515 (3d Cir. 2019) ....................4

*Rockel v. Cherry Hill Dodge*,
368 N.J. Super. 577 (App. Div. 2004) ....................5, 8

*Rosenberg v. D. Kaltman & Co.*,
28 N.J. Super. 459 (Ch. 1953) ....................12

*Rosenthal v. Rosenblatt*,
2014 WL 5393243 (N.J. Super. Ct. App. Div. Oct. 24, 2014) ....................5

*Souza-Bastos v. Fed. Auto Brokers, Inc.*,
2016 WL 3199488 (N.J. Super. Ct. App. Div. June 10, 2016) ....................5, 8

*Stabile v. Macy's, Inc.*,
751 F. Supp. 3d 429 (D.N.J. 2024), *rev'd,* 2026 WL 611125 ....................4, 8

*Stabile v. Macy's, Inc.*,
2026 WL 611125 (3d Cir. Mar. 4, 2026)....................8

*Warren v. Birchwood Adult Day Care, LLC*,
2015 WL 3998859 (N.J. Super. Ct. App. Div. July 2, 2015) ....................8

*Young v. Experian Info. Sols., Inc.*,
119 F.4th 314 (3d Cir. 2024) ....................5

Defendant Quest Consumer Incorporated ("Quest"), by and through its undersigned counsel, respectfully submits the following reply in further support of Quest's renewed motion to compel arbitration (the "Mot.") and in response to Plaintiff's Opposition (the "Opp."), and states as follows:

## I. INTRODUCTION

It is undisputed that the Purchase Terms stand as a binding contract between the parties that includes delegation of disputes to an arbitrator. Nowhere in Plaintiff's Opposition does she dispute that when she checked the box and made her purchase on the Website, she formed a binding contract with Quest. That confirmation of contract formation should be the end of the Court's analysis as it requires staying this action and compelling arbitration. Should the Court opt to proceed, it is further undisputed that Plaintiff's allegations in the Complaint turn on information about the test she purchased through the Website being allegedly shared with a third party. Thus, Plaintiff's claims, as well as any challenge to the scope of the parties' agreement, must be heard by the arbitrator and not the Court.

Unable to dispute that Plaintiff accepted a contract that included an agreement to arbitrate her claims, Plaintiff attempts to reframe her allegations and sever her purchase-related allegations from the question of whether this dispute falls within the scope of the Purchase Terms. Those arguments each fail to alter the conclusion that arbitration is the proper forum for this dispute. First, Plaintiff is wrong in arguing

that the Purchase Terms are internally inconsistent. Second, Plaintiff misstates the Registration Terms to argue they control where the Registration and Purchase Terms can be read together. Third, even if overlap is found, the subsequently signed Purchase Terms supersede the Registration Terms. Fourth, and finally, Plaintiff cannot defeat enforcement of the arbitration clause simply by pleading a putative class with aggregated damages in excess of the individualized damage cap. Thus, even if the Court assesses for itself the scope and enforcement of the parties' agreement, it should find that the claims should be arbitrated.

## II. ARGUMENT

### A. Plaintiff Does Not Dispute the Parties Formed a Contract

The Opposition does not challenge contract formation. It remains undisputed that on July 15, 2024, Plaintiff went to the Website and accepted the Purchase Terms. (Mot. 3–5, Brunelle Decl. ¶¶ 13-14.) The Purchase Terms contain a broad delegation clause that agrees disputes will be arbitrated. (Brunelle Decl. ¶ 9.) That should end the Court's assessment of this issue. Unable to dispute these legal and factual conclusions, the Opposition presents flawed arguments—the Purchase Terms' alleged internal inconsistencies (Opp. 16–18), and the maximum damages permitted in arbitration (Opp. 18–19)—related to scope and enforceability of the arbitration agreement (not formation); thus, such arguments are for the arbitrator to decide. (Mot. 14–16). Contract formation is undisputed.

### 1. Plaintiff denied accepting the Registration Terms

The Opposition's assertion that "Plaintiff registered for an account and accepted the Registration Terms" (Opp. 5; citing Compl. ¶¶ 7, 37-38) misstates Plaintiff's own allegations. The paragraphs cited in the Opposition allege that Plaintiff "is a natural person and citizen of the State of California" (*id.* ¶ 7), who "[i]n July 2024, Plaintiff registered an account on QuestHealth.com" (*id.* ¶ 37), when she "clicked a button captioned 'Register.'" (*Id.* ¶ 38.) But the Complaint does not allege acceptance of the Registration Terms or hold that out as a contract between the parties. Rather, the Complaint alleges the opposite asserting that "the [Registration] Terms and Conditions do not require any manifestation of consent, agreement, or acceptance of this provision [(i.e. the Registration Terms)] before completing registration." (*Id.* ¶ 40.) Thus, while Plaintiff's Opposition turns on her purported acceptance of the Registration Terms (at 7–8), the Complaint alleges that Plaintiff was not required to accept the Registration Terms. (Compl. ¶ 40). Thus, as a threshold matter, Plaintiff's effort to refashion her allegations in the Opposition is improper and should not be credited.[1] What Plaintiff does not and cannot dispute is that she made a purchase on the Website (*id.* ¶ 41), and that purchase included

[1] *See Jacobowitz v. Experian Info. Sols., Inc.*, 2020 WL 5700756, at *2 (D.N.J. Sept. 23, 2020); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

acceptance of the Purchase Terms. (Brunelle Decl. ¶¶ 6-8.) The Purchase Terms are an undisputedly binding contract between Plaintiff and Quest.

**2. Plaintiff raises challenges delegated to the arbitrator**

The presumption favoring arbitration applies. (Mot. 16-17.) Plaintiff relies on *In re Remicade (Direct Purchaser) Antitrust Litig.* (Opp. 8), which confirms that when deciding whether an arbitration clause applies to a certain type of controversy (i.e. its scope) "due regard must be given to the federal policy favoring arbitration." 938 F.3d 515, 520 (3d Cir. 2019) (reversing to compel arbitration because claims arose out of or related to the agreement). Because Plaintiff alleges that she made a purchase, which necessarily required her to assent to the Purchase Terms, and she does not rebut the formation of the contract in her Opposition, the presumption applies. "[T]he Supreme Court has repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Id.* at 522 (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019)).

The Purchase Terms contain a delegation clause and none of the case law cited in the Opposition undermines the well-established requirement that delegation clauses must be honored. The Opposition cites eight cases that discuss arbitrability;[2]

[2] *See Field Intelligence Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351 (3d Cir. 2022); *Jaludi v. Citigroup*, 933 F.3d 246 (3d Cir. 2019); *Stabile v. Macy's, Inc.*, 751 F. Supp. 3d 429 (D.N.J. 2024); *Kernahan v. Home Warranty Adm'r of Florida, Inc.,* 236 N.J. 301 (2019); *Rockel v. Cherry Hill Dodge*, *Rockel v. Cherry Hill Dodge*, 368 N.J. Super. 577 (App. Div. 2004); *NAACP of Camden Cnty. E. v. Foulke Mgmt.*

however, each case focused on contract formation, and *none* discussed (much less supports ignoring) a delegation clause.

Here, the Purchase Terms' delegation of disputes to be heard under the rules of the American Arbitration Association ("AAA") requires the arbitrator to decide any questions regarding arbitrability. (Mot. 14–16). "[S]ince [Plaintiff] challenged only the arbitration agreement's scope—rather than its existence or validity—and since arbitrability determinations, including scope, have been delegated to an arbitrator, nothing is left for the District Court to decide pursuant to the FAA." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 322 (3d Cir. 2024). The Purchase Terms' delegation clause provides authority to the arbitrator to resolve the issue of whether this dispute falls within the ambit of the Purchase Terms and Plaintiff does not, because she cannot, argue otherwise.

Furthermore, Plaintiff's reliance on *Field Intelligence* is misplaced given that court's focus on contract formation, which is undisputed here. In *Field Intelligence*, the court found that the issue was one of contract formation because the determination was focused on whether the parties agreed to the second contract, which would have extinguished the arbitration clause of the earlier contract. 49 F.4th at 358. However, Plaintiff does not, because she cannot, dispute that she agreed to

*Corp.*, 24 A.3d 777 (N.J. Super. Ct. App. Div. Aug. 2, 2011); *Souza-Bastos v. Fed. Auto Brokers, Inc.*, 2016 WL 3199488 (N.J. Super. Ct. App. Div. June 10, 2016); *Rosenthal v. Rosenblatt*, 2014 WL 5393243 (N.J. Super. Ct. App. Div. Oct. 24, 2014).

the Purchase Terms when she made her purchase on the Website, thus distinguishing *Field Intelligence*. Questions regarding whether the dispute falls within the ambit of the Purchase Terms must be left to the arbitrator.

However, if the Court opts to evaluate her arguments, it should find that arbitration is the appropriate forum.

**B. The Purchase Terms Control and Require Arbitration of Disputes**

Plaintiff argues that "contradictory instructions as to dispute resolution procedure across the documents" render the Purchase Terms unenforceable. (Opp. 16-18.) But the terms are not inconsistent, both can be enforced simultaneously, and the Registration Terms do not alter the import or impact of the Purchase Terms.

Plaintiff is correct that the Motion "does not address at all the interplay between the conflicting terms" (Opp. 3) because the terms are not in conflict. The Registration Terms and Purchase Terms are separate agreements that address separate services offered by Quest. The fact that Plaintiff registered her account and made her purchase on the same day is not sufficient to create an integrated contract. (Opp. 12, 14.) The Registration Terms purport to "appl[y] to your use of the Account Service," (Mot., Ex. A, § 1) while the Purchase Terms govern issues relevant to a purchaser. (Brunelle Decl. ¶¶ 9-11; Opp., Ex. 1-C.)[3] These are separate agreements.

[3] Undisputedly, Plaintiff could have registered an account and never made a purchase. Similarly, Plaintiff could have purchased her laboratory-based blood test without ever having visited the Website. (Brunelle Decl. ¶¶ 13-16.) Plaintiff's

Plaintiff points to Section 14 of the Registration Terms as the sole conflict between the Registration and Purchase Terms (Opp. 15-16), however, Plaintiff's cherry-picked statements mischaracterize that term. Plaintiff highlights the statement that "[i]f there is any conflict between this Agreement and a signed written agreement between You and Quest Consumer related to the Account Service, this Agreement will control." (Opp. 5, 14, 16, 18.) However, Plaintiff omits the preceding sentence which sheds expressly limits that argument:

> If You have not signed a separate written agreement with Quest Consumer related to the Account Service, this Agreement is the entire agreement between You and Quest Consumer related to the Account Service, replacing any *prior* agreements.

(Mot., Ex. A (Registration Terms) § 14 (emphasis added).) It is undisputed that Plaintiff consented to the Purchase Terms after (not before) she registered for an account (Compl. ¶ 41; Opp. 5); thus, Section 14 is irrelevant to Plaintiff's conflict argument. The Opposition asks this Court to simply ignore the key modifier "prior" and, instead allow the Registration Terms to supersede all prior and subsequent agreements between the parties. Plaintiff does not, because she cannot, cite any precedent for that interpretation. Plaintiff's argument violates the precept that "terms . . . should not be read in isolation and should not be used to twist and distort the

---

repeated assertion that she was "required" to accept the Purchase Terms to make a purchase from Quest (*see, e.g.,* Opp. 12-13) ignore the voluntary aspect of her desire to make a purchase through the Website.

words' obvious meaning in the minds of the parties." *Warren v. Birchwood Adult Day Care, LLC*, 2015 WL 3998859, at *4 (N.J. Super. Ct. App. Div. July 2, 2015). Under the plain language of the Registration Terms, the subsequent Purchase Terms' arbitration term is unmodified by her prior acceptance of the Registration Terms.

To support Plaintiff's factually deficient argument, the Opposition cites distinguishable cases discussing multi-part agreements where the documents were executed as part of a single transaction. For example, in *Souza-Bastos v. Fed. Auto Brokers, Inc.*, the plaintiff signed "a stack of form documents," with conflicting dispute resolution provisions, to purchase a car. (Opp. 17; citing 2016 WL 3199488, at *1–2.) Had Ms. Souza-Bastos stopped after the first form, the transaction would not have occurred, and she would not have received the vehicle. *Id.* The court rejected all three dispute resolution clauses in *Souza-Bastos* because "it was not apparent which document was signed first." (Opp. 17; citing 2016 WL 3199488, at *2.)[4] Unlike a car purchase, Plaintiff's interactions with Quest were not one unified transaction and there is no question that the Purchase Terms were agreed to after the

---

[4] Plaintiffs' other citations on this point fare no better. (*See* Opp. 17 citing *NAACP of Camden Cnty. E*, 24 A.3d at 797 (finding unenforceable car purchase documents with "vague and inconsistent provisions"); and *Rockel*, 368 N.J. Super. at 583 (denying arbitration where dissonant terms in a transaction documented in several agreements was unenforceable).) Plaintiff also relies upon *Stabile v. Macy's, Inc.*, 751 F. Supp. 3d 429 (D.N.J. 2024) (Opp. 16, 18), a decision that was subsequently reversed by the Third Circuit based on a finding that mutual assent to the arbitration agreement required compelling the parties to arbitrate the plaintiff's claims. *Stabile v. Macy's, Inc.,* 2026 WL 611125 (3d Cir. Mar. 4, 2026).

Registration Terms. The Registration Terms do not alter the Purchase Terms' enforceability.

### C. The Registration and Purchase Terms Should Be Read Together

Plaintiff incorrectly argues that the Registration Terms "govern this dispute and mandate that it shall be resolved exclusively in a New Jersey court." (Opp. 8). The Opposition is both factually and legally wrong.

First, Plaintiff asserts that the Registration Terms "broadly apply to" and "govern the user's complete use of their account on the website" (Opp. 10-11); however, that language is (conspicuously) not a direct quote from the Registration Terms and, in fact, overstates the plain language of the Registration Terms. Rather, Section 1 of the Registration Terms confirms that Quest has "other Web sites and services that may be covered by different terms and conditions of use." (Mot., Ex. A, § 1.) Thus, while the Registration Terms supersede any prior agreements, they also contemplate a user being subject to additional terms, including if (like here) they subsequently make a purchase through the Website. Thus, interpreting the Purchase Terms to govern this dispute is consistent with the Registration Terms.

Second, Plaintiff mischaracterizes her own allegations in an attempt to force this dispute within the ambit of the Registration Terms. Plaintiff argues that "Plaintiff and accountholders like her could pursue the instant claims without ever making a purchase or clicking any checkbox next to the Purchase Terms" (Opp. 12); however,

that hypothetical scenario is inconsistent with the Complaint. While Plaintiff could have crafted her pleading to pursue her claims without making a purchase, she cannot amend now (via her briefing) to ignore the connection her allegations forge between the alleged capture of information and her purchase on the Website. *See Pa. ex rel. Zimmerman,* 836 F.2d at 181 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff based her claims on the alleged capture of data related to her purchase on the Website such as the test specimen ID, test name, test order number, order total, in-person test, and credit card provider (Compl. ¶ 43); thus, she cannot now claim that her purchase is irrelevant to her allegations or the enforceability of the arbitration agreement in the Purchase Terms.

Plaintiff's argument that an account was required to place a purchase, and the customer ID was assigned at registration is similarly insufficient to show the Registration Terms control. (Opp. 12–13.) While the Registration Terms govern a consumer's "use of the Account Service" (Registration § 1), Plaintiff's argument seeks to write the Purchase Terms out of existence by arguing any activity on the Website following account registration is part of her use of the "account service." (Opp. 11–13.) "To interpret the contract[s] that way would violate a cardinal rule of contractual interpretation that counsels against rendering words or provisions meaningless." *Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693

F.3d 417, 430 (3d Cir. 2012). Plaintiff's allegations focus on information related to her purchase (Compl. ¶¶ 27-28, 43) and thus the Purchase Terms control "any dispute between You (purchaser) and Quest." (Brunelle Decl. ¶¶ 9-10.) Plaintiff improperly asks to read the Purchase Terms out of existence despite her purchase-related claim.

Plaintiff's focus on the customer ID being assigned at registration (Opp. 11–13) is similarly misplaced. The customer ID is just one of the many data points Plaintiff alleges to have been captured, including numerous data points solely related to Plaintiff's purchase. (Compl. ¶¶ 27, 28, 42, 43.) Thus, the Opposition's shift of focus to the "registration-generated identifier as the backbone of the purchase experience" (Opp. 13) is, at best, disingenuous. Plaintiff argues that the Tealium iQ tag "track[s] users as they browsed the [W]ebsite, linking the URLs they visited on QuestHealth.com with their Quest customer ID assigned to that unique accountholder" (Opp. 12); however, arbitration-related discovery confirmed that software fires immediately upon landing on the Website (Opp. 12 citing Opp. Ex. 1-A, Def.'s Resp. to Interrog. No. 6; *see also* Mot., Ex. B, Quest's Dec. 22, 2025 Verified Interrogatory Responses, No. 6 (hereafter "Interrog. Response No. 6").), before any registration of an account.[5] Thus, the assignment of a customer ID at

[5] While Plaintiff alleges that the Tealium iQ software might be able to perform a host of services (Opp. 12), such allegations are contradicted by the information Quest confirmed during arbitration-related discovery showing that Tealium's use on this Website was "essential for presentation of the Website OneTrust cookie banner" and was implemented to assist with honoring visitors' privacy elections on that banner.

registration is a red herring. Plaintiff's Complaint focuses on allegations regarding the capture and sharing of information submitted in connection with her purchase of a blood test and review of the results from that test; thus, the Purchase Terms, governing any dispute between a purchaser (like Plaintiff) and Quest, must control.

Third, even if Plaintiff was right that the scope of the Purchase and Registration Terms conflict, the Purchase Terms control. "The general rule is that a subsequent contract covering the same subject matter and made by the same parties, but containing terms inconsistent with the former contract so that the two cannot stand together, rescinds, supersedes and substitutes for the earlier contract and becomes the only agreement on the part of the parties on the subject matter." *Rosenberg v. D. Kaltman & Co.,* 28 N.J. Super. 459, 463–64 (Ch. 1953). That is true even if the second agreement does not expressly state its intent to replace the first. *Id.*; *Kant v. Seton Hall Univ.*, 2008 WL 65159, at *7 (D.N.J. Jan. 4, 2008). Thus, the later-accepted Purchase Terms (with its arbitration clause) would control.

**D. Plaintiff's individual damages fall within the cap**

Plaintiff argues that her dispute exceeds $750,000 in damages based on improper aggregation of claims asserted for putative class members. (Opp. 18, 19.) First, Plaintiff's suggestion that the damage cap prevents application of the

---

(Interrog. Response No. 6.) Plaintiff's conclusory allegations are now contradicted by the record evidence, which Plaintiff does not, because she cannot, address.

arbitration clause is a challenge to the scope and enforceability of the arbitration clause (not contract formation), rendering it a question for the arbitrator. Further, Plaintiff does not allege any actual damages (Compl., Prayer for Relief) and does not cite any personal damages even approaching $750,000.

Once again, Plaintiff asks the Court to ignore the plain language of the Purchase Terms to fit her desired outcome. Here, Plaintiff ignores the language limiting the damages provision to disputes between "You and Us" or "We," which expressly means disputes between the Plaintiff and Quest. (Brunelle Decl. ¶¶ 9, 10.) That same phrasing of the individualized nature of the dispute analysis appears no less than four times in the provision (Opp., Ex. 1-C § 25), confirming an intent to limit any arbitration to individual, not aggregated or class-wide, disputes.

"The Supreme Court has consistently reiterated that there is a 'fundamental' difference between class arbitration and the individualized form of arbitration envisioned by the FAA.'" *Erasmus v. LegalZoom.com, LLC*, 2025 WL 1122237, at *6 (D.N.J. Apr. 15, 2025). Class arbitration sacrifices the principal benefits of arbitration and makes the process slower, more costly, and less efficient. *Lamps Plus*, 587 U.S. at 185. For that reason, consent to participate in class arbitration cannot be read into an arbitration provision absent an affirmative "contractual basis for concluding that the party *agreed* to do so." *Id.* (emphasis in original). But reading such an expansion into the provision is precisely what Plaintiff proposes.

By isolating one sentence of the dispute resolution provision, the Opposition argues that the absence of the word "You" in the sentence "Any dispute concerning $750,000 or more will be resolved exclusively in the Federal courts of New Jersey" warrants a finding that the provision is broad enough to cover a class-wide dispute. (Opp. 19.) Not so. Plaintiff's strained interpretation requires ignoring the rest of the contractual term, which contravenes basic contract interpretation requirements. *Atl. Northern Airlines v. Schwimmer*, 12 N.J. 293, 307 (1953) ("[W]ords used to express the common intention cannot be assessed with a reasonable degree of assurance unless the circumstances which attended their utterance be considered.").

The Purchase Terms bind individuals when "You purchase Services," and emphasize that "You will not be able to purchase the Services" through the Website without choosing to accept them. (Opp. Ex. 1-C, Preamble.) Having opted to purchase her test through the Website, Plaintiff is bound by the Purchase Terms. The individualized nature of the Purchase Terms' arbitration clause confirms an intent to arbitrate disputes between the purchaser and Quest on an individual basis but Plaintiff offers no valid basis to ignore the limiting power of the word "You" throughout the dispute resolution provision. (Opp. 19.) The damages cap must be read as a calculation of individual damages to honor binary arbitration.

Plaintiff also offers the strained argument that the definition of "You" as "the purchaser of any services" in the Purchase Terms "is not limited to an individual

purchaser or a purchaser in their individual capacity." (Opp. 19.) That interpretation has zero basis in the Purchase Terms and contravenes the plain language of the agreement. As Plaintiff points out, "[c]ourts may not create an ambiguity where none exists." (Opp. 9 citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999).) Plaintiff does not, because she cannot, offer any validation for reading language defining "You" as "the purchaser of any of the Services" (phrased in the singular) to mean all purchasers aggregated together (in the plural). Plaintiff's continued efforts to rewrite the plain language of the Purchase Terms is improper. To the extent an argument regarding the damage cap is relevant, that issue should be presented to the arbitrator since it relates to enforcement of the Purchase Terms rather than formation of the parties' agreement. To the extent the Court opts to reach the question of applicability of the damage cap, it does not bar the individual arbitration provision.

## III. CONCLUSION

for the foregoing reasons, and the arguments set forth in the moving papers, Quest respectfully requests that the Court compel Plaintiff to arbitrate her claims and stay this action pending the outcome of that proceeding.

Respectfully submitted,

Dated: May 1, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Paul A. Rosenthal*
Paul A. Rosenthal (NJ Bar No. 024912006)
Krista N. Hartrum (NJ Bar No. 401902022)
600 Campus Drive
Florham Park, NJ 07932
Tel: 973-549-7000
paul.rosenthal@faegredrinker.com
krista.hartrum@faegredrinker.com

*Attorneys for Defendant Quest Consumer, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2026, the foregoing was served on Plaintiff's counsel via email, pursuant to the Court's Order dated April 10, 2026 (Dkt. No. 36), at the following address:

Matthew A. Schiappa, Esq., mschiappa@lomurrolaw.com

Michael Ovca, Esq., movca@edelson.com

*/s/ Paul A. Rosenthal*

Paul A. Rosenthal